[L. A. No. 2463. Department Two.—December 30, 1910.]

PEVERIL MEIGS, Respondent, v. RUFUS F. PINKHAM et al., Appellants.

Surface Waters—Diversion by Artificial Ditch—Injury to Adjoining Proprietor.—Every property-owner has a right to construct ditches or artificial drains upon his land and by such channels carry away the surface water therefrom, subject only to the legal inhibition that by such means he shall not deflect or discharge the water upon the land of an adjoining proprietor.

Id.—Construction of Ditch—Injury Not Immediate—Statute of Limitations—Action to Enjoin Maintenance of Ditch.—Where a landowner constructs such artificial ditch upon his own land under such conditions that no immediate danger was to be apprehended to the land of an adjoining proprietor, and with only a probability that if maintained under certain future and changed conditions injury would follow, the adjoining proprietor had a right to assume that when such changed conditions occurred and actual damage to his land resulted, the injury would be abated. The right of action of the adjoining proprietor to enjoin the maintenance of the ditch did not accrue until such injury actually occurred, and if he brought such action within the statutory time thereafter, the claim of the owner

of the ditch that the action should have been commenced when the ditch was originally constructed is untenable.

ID.—TIME OF INJURY—EVIDENCE.—Upon a review of the evidence as to the time injury first occurred to the plaintiff's land from the maintenance of the defendants' ditch, it is held that the action was brought in time, upon any theory of the statute of limitations applicable to the case.

ID.—LACHES BARRING RIGHT OF ACTION.—As the statute of limitations is applicable to both legal and equitable actions, there can be no laches in delaying the bringing of such action for an injunction, if it is brought within the period of limitations, unless there are some facts or circumstances attending the delay which have operated to the injury of the defendants. No such facts appear in the present case.

ID.—CONSTRUCTION OF DECREE OF INJUNCTION.—The decree of injunction issued in this case, properly construed, does not prohibit the defendants from diverting the storm waters from their natural channel across their lands, nor from carrying them elsewhere across them, except that they shall not divert or carry them so that any part of the storm waters will flow upon the land of the plaintiff.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. Samuel E. Crow, Judge.

The facts are stated in the opinion of the court.

Wm. G. Griffith, and H. C. Booth, for Appellants.

Canfield & Starbuck, for Respondent.

LORIGAN, J.—Plaintiff brought this action to abate, as a private nuisance, a dam and ditch maintained on the land of defendants adjoining lands of plaintiff; to enjoin defendants from further maintaining them and thereby diverting storm waters upon the lands of plaintiff, and for damages.

Judgment was entered in favor of the plaintiff granting the injunction as asked, and awarding plaintiff damages, and defendants appeal from said judgment and from an order denying their motion for a new trial.

Reliance for reversal is based on three grounds: 1. It is claimed that the evidence shows that plaintiff's cause of action is barred by the statute of limitations; 2. That plaintiff has been guilty of laches in prosecuting his action; and 3.

That the injunction granted by the court, if warranted at all, is broader than the law authorizes.

The general situation surrounding this litigation appears to be as follows: The plaintiff and defendants own adjoining tracts of land near the city of Santa Barbara, plaintiff owning the easterly and defendants the westerly one. Both tracts face southerly toward the Pacific Ocean, the northerly parts lying in the foothills, from whence, through several ravines, the storm waters in the winter time flow through the lands of the parties to the Pacific Ocean. Immediately back of the dividing line between the lands of the plaintiff and defendants is situated one of these ravines, the storm waters of which in their ancient, natural, and accustomed course flow in a southwesterly direction diagonally across the land of defendants.

In 1889 one I. K. Fisher owned the land now owned by defendants and plaintiff then owned his land. Fisher, in order to prevent the waters from flowing across his land in the accustomed diagonal course just mentioned, constructed a dam at the mouth of the ravine particularly referred to above, and dug a ditch therefrom due south along the west side of the division fence between his land and that of plaintiff, but on his side to the county road, and thence along the county road parallel to the southern boundary of his land westerly to an outlet into the ocean. As a result he carried the waters at right angles around his land and by preventing it from flowing diagonally across it redeemed his land. In its original natural and straight flow through the land of Fisher (which he subsequently conveyed to the defendants, who have ever since maintained the dam and ditch), the storm waters carried with them in suspension sand and silt which in considerable quantities were deposited upon the land of defendants. When first constructed by Fisher the ditch here involved had firm sides in the adobe land along the division fence but, on account of its rectangular course, its longer length, and lesser average grade than the original shorter and more direct diagonal course, the flow of the water was impeded and as a natural result the sand and silt were deposited quicker and in larger quantities along its course. To such an extent was this done that during the first flow of storm water after its construction the ditch filled up with

sand át its right angle turn more rapidly than two men could clean it out and, by reason of this impediment, overflowed the extreme southwest corner of plaintiff's land with water and sand. Fisher, however, exerted himself thereafter, as did defendants after they acquired the property, to keep the water off the land of plaintiff, and were so successful that for many years no further flow upon plaintiff's land occurred. The ditch, however, during this interval of years repeatedly filled up and overflowed the land of defendants so that eventually there was deposited along the division fence on the land of defendants a blanket of sand which raised the surface of the defendants' lands from a foot to a foot and a half. The adobe ditch with its firm sides became filled up and thereafter the water flowed in a ditch through the sand above the summit of a slight ridge dividing the land of plaintiff and defendants. This ditch, though kept in repair as far as possible by defendants, having no sufficient resistant power, would, during the years when there were heavy storms, melt away and flatten out, the storm waters overflowing the land of defendants but not flowing upon that of plaintiff. These conditions continued for many years without affecting the plaintiff's land. While there is some dispute between respective counsel as to when the first injury to plaintiff's land occurred subsequent to the original construction of the ditch, it is at least undisputed that in February and March, 1906, and January and February, 1907, although defendants had repaired the said ditch, it was again flattened out and the waters rushed over plaintiff's land. Without mentioning the damage to plaintiff's land by reason of any particular overflow, it appears that as a result of all of them during the two years last mentioned a large portion of plaintiff's land has been covered to a depth of from six inches to two feet with clear sand which is incapable of cultivation and is too large in quantity to be plowed into the adobe land it covers. Gulleys were also cut through the land of plaintiff, successive crops of garden truck destroyed, and several hundred young gum trees died on account of the sand deposit about them. Plaintiff called on one of the defendants in an endeavor to have some measures taken for the joint protection of their lands, plaintiff offering to defray a portion of the expense himself; this defendant refusing to assist, or to take any measures to

keep the water off plaintiff's land, and declaring an intention to continue the maintenance of the ditch as it then existed, this action was brought by plaintiff in July, 1907, to obtain the relief which the court by its decree awarded him.

We make only this general statement of the facts because it is not questioned but that on the evidence the plaintiff was entitled to an injunction unless his right to maintain the action therefor was barred by limitation or by laches.

As to the question of limitation. This point is directed only against the action in as far as it is brought for preventive relief. No point is made on it as far as the action is one for damages.

It is insisted generally by appellant that at the time this dam and ditch were constructed by Fisher it was apparent to plaintiff, according to his own testimony, that if they were maintained the result would be that sand and silt would be gradually deposited in such large quantities on the land of defendants as would ultimately turn the waters upon the land of plaintiff. From this it is insisted that as there was an apparent invasion of the property rights of plaintiff from the time of the construction of the dam and ditch, a right of action to enjoin defendants' maintenance of them arose then, and that the statute of limitations began to run from that time, whether there was any actual damage to plaintiff or not. We cannot agree with this view. Every property-owner has a right to construct ditches or artificial drains upon his land and by such channels carry away the surface water therefrom and this right is only limited by the inhibition of the law, that by such means he shall not deflect or discharge it upon his neighbor's land. The ditch here was built entirely upon the land of Fisher and he had a right to maintain it there for the purpose contemplated as long as it did not injure the plaintiff. The testimony of the plaintiff was not that immediate danger was to be apprehended therefrom when the ditch was first constructed. He did not so state, and it is apparent as a fact that no such immediate danger was to be apprehended or that any material injury then accrued. No injury could necessarily result until the land of defendant had been so raised by the deposition of sand on it that it became higher than the slope of plaintiff's land from the ridge along which the ditch ran. This did not occur

until at least fourteen years after the construction of the ditch. Although it is shown that in the first year it was built —in 1889—there was an overflow at the extreme southwest corner of plaintiff's land doing some trivial damage, this did not proceed from the accumulation of sand on defendants' land which now creates the trouble and makes the maintenance of the ditch a continuing nuisance. This damage of 1889 was of a trivial character arising from the unanticipated deposit of sand at the rectangular turn. The cause was immediately removed by Mr. Fisher and the ditch was carefully taken care of by him and the defendants thereafter, and there was no further flow on plaintiff's land for fourteen if not seventeen years. The danger which the plaintiff apprehended, and which he stated would result from the deposition of sand on defendants' land through which the ditch ran, was not an immediate danger, but one which he was satisfied would result if the dam and ditch were maintained after the sand deposits had been made. As the ditch was in firm ground, and, as the evidence shows, deep and wide, when constructed, there was no immediate danger to be apprehended. While the injury occasioned by the overflow in 1889 gave plaintiff a right of action for nominal damages, as the injury was merely trivial, it gave him no right to preventive relief in equity. The construction of the dam and ditch was not itself a nuisance, nor an invasion of the right of plaintiff, because they were not constructed on his land. As originally constructed, and while maintained as so constructed, they were not. The nuisance proceeded from the subsequent deposition of sand along the division fence on defendants' land and the destruction and obliteration thereby of the original ditch and the impossibility thereafter of carrying the water in a direct channel through the sand deposit, so that what in its original construction had been lawful had subsequently, and on account of changed conditions, become a nuisance. Because this might occur, however, did not require plaintiff to commence an action at once under penalty of being denied preventive relief when the nuisance became actually established. The original construction of the dam and ditch being lawful was not itself an invasion of any property right of the plaintiff and though it might be anticipated that at some time in the future conditions might arise which might make

its maintenance such an invasion, it was not to be presumed that when it became such nuisance it would be continued. On the contrary, as the defendants had no prescriptive right to maintain the dam or ditch, and never, of course, intended to maintain it to the injury of plaintiff, and certainly exerted themselves so that it should not be, plaintiff had a right to assume that when conditions arose so that its further maintenance would cause actual and continuous injury to plaintiff and thereby become a nuisance, defendants would abate it. There was no danger to be apprehended if the ditch was maintained as originally contemplated; there was only a probability that if the dam and ditch were maintained by defendants under certain future and changed conditions injury would follow. Plaintiff had a right to assume that when those conditions occurred and actual danger to plaintiff's land was not only threatened, but actually occurred, the nuisance would be abated, and as it was not, his right of action may be legally said to have then accrued, and if such action was brought within the statutory time thereafter, the claim of defendants that it should have been brought when the dam and ditch were originally constructed is untenable.

It is insisted by appellants, however, that even if the plaintiff's right to maintain this action did not accrue until the specific injuries to his land, other than the overflow of 1889, occurred, still his right of action was barred by the statute of limitations. This claim is predicated upon the assertion of appellants that actual damage to plaintiff's land by overflow occurred after the changed conditions as to the dam and ditch as early, first, as the winter of 1902; again, in the winter of 1903, and in September, 1904. As this action was not commenced until 1907, the theory of the appellants is that the two years' limitation in subdivision 1 of section 339 of the Code of Civil Procedure, pleaded by them, applied to this character of action, as one upon "an obligation or liability not founded upon an instrument in writing" within the purview of that section. In support of their position they rely upon language used in the case of *Piller* v. *Southern Pacific R. R. Co.,* 52 Cal. 42, which they claim sustains this contention. Respondent insists that the proper section of the code limiting his right to maintain this action for an injunction (because no objection was made to that part of the judgment.

for damages) is section 343, and relies on *Lux* v. *Haggin,* 69
Cal. 255, [4 Pac. 919, 10 Pac. 674], and *Dorr* v. *Thornburg,*
90 Cal. 64, [25 Am. St. Rep. 100, 27 Pac. 30]. We perceive
no reason for considering the discussion on this point. The
evidence as to whether there was an overflow of plaintiff's
land in the winters of 1902 and 1903 was conflicting, and as
the court decided that plaintiff's cause of action was not
barred by the provisions of the code section pleaded by de-
fendants, it necessarily decided the conflict against any over-
flow having occurred in those years. As to the alleged over-
flow of 1904. The evidence of a witness whose testimony is
relied on by appellants to sustain such an overflow is rather
indefinite as to what fence he saw the water flowing through.
He was not called by the defendants (whose witness he was)
to prove that any water flowed upon the land of plaintiff in
that year or any other. His testimony was as to what water
flowed on defendants' land, and while on cross-examination
by counsel for plaintiff he stated that he saw a little bit of
water running through a fence, he does not clearly specify
what fence, and from the general trend of his testimony it
is reasonably apparent that he was referring to an east and
west partition fence, and not to the north and south division
fence dividing plaintiff's and defendants' lands and along
which the ditch ran. So that the only overflows upon the
land of plaintiff having occurred during the heavy storm
floods in February and March, 1906, and January and Feb-
ruary, 1907, as this action was brought in 1907, upon any
theory as to the statute of limitations, it was brought in time.

As to laches. Under our law, as the statute of limitations
is applicable to both legal and equitable actions, there can be
no laches in delaying the bringing of an action if it is brought
within the period of limitation (*Lux* v. *Haggin,* 69 Cal. 255,
[4 Pac. 919, 10 Pac. 1074]; *Cahill* v. *Superior Court,* 145
Cal. 42, [78 Pac. 467]; *Cohen* v. *Cohen,* 150 Cal. 99, [88 Pac.
267]), unless there are some facts or circumstances attending
the delay which have operated to the injury of the defendants.
Nothing of the kind appears here. It is neither alleged nor
asserted that defendants have in any way been injured, or at
all affected, with respect to the relation of their lands to this
dam and ditch by anything the plaintiff did or did not do.
They took their title to the land from Fisher with full knowl-

edge of the conditions with respect to the dam and ditch and of the liability under certain conditions of injury to plaintiff's land by its maintenance, and they voluntarily assumed this liability. Hence, as the statute of limitations does not apply, neither can the bar of laches.

It is complained that the decree of injunction in the case is broader than the law allows. In that regard it is claimed that the decree, literally construed, after ordering the defendants to remove the dam and ditch, enjoins them from doing three separate and distinct acts: 1. Restoring the dam and ditch; 2. Diverting the storm waters easterly from their natural course; and 3. Turning the storm waters upon the land of plaintiff. Particular exception is taken to the second provision referred to, it being claimed that it is a limitation on defendants' undoubted legal right to divert surface waters from their land in any course through their land that they see fit, so long as they do not injure their neighbor. Of course, defendants have this right and our examination of the decree satisfies us that the trial court by it has not curtailed it or attempted to do so; that it is not open to defendants' complaint that it does so. When the terms of the injunctive decree are examined, discarding verbal niceties, and with reference to the record in the case, and the case made to which it applies, it is evident that it does not, as contended by appellants, prohibit them from diverting the waters from the ancient and natural diagonal course across their lands, nor prohibit them from carrying them easterly over them or elsewhere across them, except that they shall not divert or carry them so that any part of the storm waters will flow upon the land of plaintiff.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.