[L. A. No. 24830. In Bank. Sept. 12, 1958.]

DEPARTMENT OF MENTAL HYGIENE, Respondent, v. LAURENCE McGILVERY, as Executor, etc., Appellant.

744

Carter, Young, Zetterberg & Henrie and Richard T. Young for Appellant.

Edmund G. Brown, Attorney General, and Ariel C. Hilton, Deputy Attorney General, for Respondent.

SHENK, J.—A rehearing was ordered to consider the contention of the defendant, first elaborated upon in the petition for rehearing, that the provisions of the Welfare and Institutions Code, sections 6650 et seq., held by the court in the former opinion to impose an absolute liability on a mother to pay for the care, support and maintenance of her mentally ill daughter in a state institution, is a deprivation of property without equal protection of law and without just compensation in violation of the state and federal Constitutions.

In 1935 Joan McGilvery, daughter of the decedent was adjudged mentally ill and from that time has been confined in state hospitals and maintained and provided for by state

agencies whose interests the Department of Mental Hygiene now represent. When first confined Joan was the wife of Neil McGilvery. Their son Laurence, was 3 years of age. In 1936 the husband disappeared and his whereabouts remain unknown. Joan's mother took Laurence into her home and provided for his support and education. In 1955 she died. Her will was admitted to probate and Laurence, then an adult, was named as executor. Other than a $1,000 trust fund for the benefit of Joan, the estate was left to Laurence.

It appears that at the time of Joan's commitment, Mrs. Girard was a single woman, 63 years of age. She owned a home in Oakland from which she had an annual income of approximately $200. She supplemented that income with her earnings as a nurse, found to be about $20 a month. The only evidence of her earnings between the time of Joan's commitment and Mrs. Girard's death relates to the last four years of her life. During those years she had an income of approximately $100 a month, $50 a month from an investment fund derived, apparently, from the sale of her home, and $50 a month from federal old age benefits. At her death her estate was appraised at $14,504.69. It increased to $18,984.69 during administration.

The plaintiff Department of Mental Hygiene presented to the executor its claim against the estate for $4,737 for Joan's support and maintenance for the four-year period immediately preceding Mrs. Girard's death. The executor rejected the claim and this action was commenced by the department to enforce payment. Judgment in the amount sought was for the plaintiff and the executor appealed. There is no dispute as to the amount of the claim. The only question is the liability of the estate for its payment.

The department's claim is based upon legislation found in the Welfare and Institutions Code which provides for the care and maintenance of mentally ill persons. Section 6650 provides in its pertinent parts: "The husband, wife, father, mother, or children of a mentally ill person . . . shall cause him to be properly and suitably cared for and maintained. . . . The husband, wife, father, mother, or children of a mentally ill person . . . and the administrators of their estates . . . shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. . . ." Section 6651 provides in part: "The monthly rate for the care, support, and maintenance of all mentally ill . . . persons . . . at the state hospitals for the mentally ill where there is liability to

pay for such care, support, and maintenance, shall be reviewed once each fiscal year and fixed at the state-wide average per capita cost of maintaining patients in all state hospitals for the preceding fiscal year, as determined by the Director of Mental Hygiene, and shall be payable in advance. . . . The Director of Mental Hygiene may reduce, cancel or remit the amount to be paid by the estate or the relatives, as the case may be, liable for the care, support, and maintenance of any mentally ill . . . person . . . who is a patient of a state hospital for the mentally ill, on satisfactory proof that the estate or relatives, as the case may be, are unable to pay the cost of such care, support, and maintenance. . . .'' In section 6652 the Department of Mental Hygiene is given the authority to take such action as may be necessary to effect the collection of the charges mentioned in section 6650.

In section 6653 it is provided that ''The department shall, following the admission of a patient into a State hospital for the insane . . . make an investigation to determine whether the patient has any relative or relatives responsible under the provisions of section 6650 for the payment of the costs of . . . maintenance, and shall ascertain the financial condition of such relative or relatives to determine whether in each case such relative or relatives are in fact financially able to pay such charges. . . .''

Following Joan's commitment an investigation was conducted regarding Mrs. Girard's financial circumstances. No charge or other exaction was attempted to be collected from her under section 6650 of the Welfare and Institutions Code, either at that time or during her lifetime.

It is claimed by the defendant that section 6650 does not impose on the persons named therein an absolute and unconditional liability for the support and maintenance of a mentally ill relative, but that liability is imposed only if the investigation mentioned in section 6653 reveals that those persons ''are in fact financially able to pay such charges.'' It is obvious that the language of section 6650 cannot be considered alone, but that it must be considered with other sections *in pari materia.* (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526].) Section 6650 was enacted in 1937. It was based on the former Political Code section 2176. That section contained the provisions, now set forth in all material respects in sections 6652 and 6653, as well as 6650, including the provision that the department shall make an investigation to determine the financial ability of

named relatives to pay the charges for the support and maintenance of the mentally ill. Under the circumstances sections 6650 and 6653 "shall be construed as restatements and continuations . . . and not as new enactments" (Welf. & Inst. Code, § 2, and are to be considered together. Accordingly we must look to the construction given section 2176 of the Political Code prior to 1937.

Section 2176 when first enacted in 1903 (Stats. 1903, p. 505) clearly made ability to pay a condition of liability. It provided that ". . . the husband, wife, father, mother or children of an insane person, if of sufficient ability . . . shall be liable for the support and maintenance of any insane person in a state hospital. . . ." In 1909 that section was modified and the words "if of sufficient ability" were deleted. (Stats. 1909, p. 71.) In 1921 the section was again modified by the addition of a second paragraph requiring an investigation into the financial circumstances of the responsible parties to determine whether they were "in fact financially able to pay such charges" provided for in the first paragraph. (Stats. 1921, p. 1335.) In 1931 a further amendment did not alter the provisions of the same section in any respect material to the present inquiry. (Stats. 1931, p. 322.) It was in 1937 that the section was divided. The first paragraph, providing for charges as against responsible relatives, became section 6650 of the Welfare and Institutions Code. The second paragraph, providing for an investigation into the financial circumstances of responsible relatives, became section 6653 of the same code.

█ It is significant that the Legislature had first expressly specified the relatives who were responsible as those "of sufficient ability" to pay and thereafter deleted that requirement. The defendant contends that regardless of the deletion, the Lunacy Commission, then performing the functions of the Department of Mental Hygiene, continued to use ability to pay as a criterion in making charges after 1909. It appears in several of the commission's biennial reports to the Legislature that ability to pay was considered as a factor in determining whether the commission enforced its monthly charges. (See Reports of the State Commission in Lunacy, Attorneys' Reports: Vol. 4, Appendix to Journals of Senate and Assembly of California, 41st Session (1915), p. 24; Vol. 6, Appendix to Journals of Senate and Assembly of California, 42nd Session (1917), p. 32; Vol. 1, Appendix to Journals of Senate and Assembly of California, 44th Session (1921), p. 19.) But there is nothing to indicate in either the statutes or in the

administrative practices that ability to pay was a factor in determining liability for the charges after 1909. Likewise in 1921, when the provision for the investigation of the financial circumstances of responsible relatives was added there was no indication that the purpose of the added provision was to determine liability of relatives already made unequivocally liable. The language of the first paragraph of section 2176 and the change of the law in 1909 too clearly provided for the imposition of an initial liability to permit any other construction. The investigation provided for in the 1921 legislation must be deemed to serve some purpose and that purpose is apparent from companion sections first enacted in 1903. Section 2180 of the Political Code then enacted provided for the amount of monthly support to be paid by relatives of the mentally ill, and further provided that "the medical superintendent of a state hospital for the insane shall, on the order of the commission, reduce or remit the amount to be paid by the estate or the relatives, as the case may be, liable for the care, support, maintenance and clothing of any insane person committed thereto and confined therein, on satisfactory proof that said estate or said relatives, as the case may be, are unable to pay the said sum. . . ." (Stats. 1903, p. 506.) The foregoing has been carried through and appears today in its material aspects in section 6651 of the Welfare and Institutions Code above set out. The legislation of 1921, in providing for an investigation of financial circumstances of responsible relatives, was intended to furnish state agencies with knowledge sufficient to enable them to reduce or remit the amounts for which the relatives were liable if the circumstances justified it.

 It therefore appears that while an unconditional liability is imposed, the amounts due thereunder may be reduced, remitted, or cancelled by administrative action. Mere inability to pay cannot of itself constitute a reduction, remission or cancellation of the obligation. As stated, proper consideration of the statutory provisions clearly indicates that the Legislature intended liability to attach regardless of ability to pay. It is true that the Director of Mental Hygiene (or his predecessor, the Director of Institutions) might have cancelled or remitted the amounts due, following an investigation and determination of inability to pay on the part of the deceased, in accordance with section 6651 of the Welfare and Institutions Code. But there is no evidence that such action was taken following the initial investigation. On

the other hand it does appear that during the four years for which recovery is sought the Department of Mental Hygiene, through its director, made determinations as to the monthly rate for the care, treatment, support and maintenance of mentally ill patients and that the claim of the department filed in the present case was in accord with those rates.

■ Mere failure to enforce the obligation cannot be deemed to constitute such administrative action as would result in modifying, remitting or cancelling the obligation, constructively or otherwise. The only effect of such failure, insofar as the obligation to pay is concerned, is to make unenforceable those portions of the obligation which, in accordance with the applicable statute of limitations (Code Civ. Proc., § 345), were outstanding for more than four years.

The plaintiff relies on a decision of the Appellate Department of the Superior Court. (*Department of Mental Hygiene* v. *Shane*, 142 Cal.App.2d Supp. 881 [299 P.2d 747].) In that case a father did not have the ability to pay for the support of his son, an inmate in a state hospital. Nevertheless his estate was held liable in an action against the executor, although no attempt had been made to collect the amounts due from the father during his lifetime. The present case cannot be distinguished from that case. Decisional law in other states is based on legislative enactments not the same as those here involved and for that reason are not controlling.

■ It is contended by the defendant that our statutory provisions provide "only for prospective collection, in advance, by order duly made and modifiable." The argument assumes that an order must be made before the obligation is collectible. But the obligation to pay was unconditionally created by statute upon Joan's commitment, and no administrative order was required to perfect it. It continued in the absence of effective administrative action to modify, remit or cancel it. Thus it cannot be said that after Mrs. Girard's death the state purported for the first time to create an obligation to pay for Joan's maintenance. ■ Nor can it properly be contended that the amounts due from an estate for past obligations within the period of limitations are uncollectible from the later acquired assets of the estate. In *Estate of Phipps*, 112 Cal.App.2d 732 [247 P.2d 409, 33 A.L.R.2d 1251], the Department of Mental Hygiene brought an action under section 6655 of the Welfare and Institutions Code against the estate of an incompetent for care and maintenance furnished prior to his acquisition of the estate. It was con-

tended that there was a legislative intent to limit liability to those obligations which arose after the acquisition of assets by the estate. The court held that "Section 6658, which provides that the department may bring an action to enforce payment for a patient's care against any person, guardian or relative, does not limit such action to a situation in which the judgment is collectible." While the provisions of the law applicable to the present case are not quite the same as those there involved they are found in the same article of the Welfare and Institutions Code and require a consistent construction.

 Likewise there is no merit in the contention that the department has waived its right by failing to make a prior demand for payment, or that it is now estopped from demanding payment. In *Estate of Fassetta*, 14 Cal.App.2d 239 [57 P.2d 1336], it was claimed that "the director [of the Department of Institutions] is estopped to present said demand on account of leading the guardian to understand that no demand of the kind would be made, but that the same was waived." There, as here, the defendant relied upon the state's silence over the years; but there was no proof that the state gained any advantage by its conduct, or that the defendant changed his position or suffered any disadvantage in reliance upon the claimed waiver, and the court affirmed a judgment for the Department of Institutions. Nor, is the action barred by laches. "[T]here can be no laches in delaying the bringing of an action if it is brought within the period of limitation, unless there are some facts or circumstances attending the delay which have operated to the injury of the defendant." (*Meigs* v. *Pinkham*, 159 Cal. 104 [112 P. 883] ; see also *Burns* v. *Ross*, 190 Cal. 269, 278 [212 P. 17] ; *Handyspot Co.* v. *Buegeleisen*, 128 Cal.App.2d 191, 195-196 [274 P.2d 938] ; 18 Cal.Jur.2d 208.) In the present case there is no substantial evidence of injury to the defendant occasioned by the delay in bringing the action.

 From time immemorial it has been the natural primary obligation of the parent to bear the financial burden of caring for an afflicted child. In this humanitarian age the state has assumed that obligation in the absence of the parent's ability to do so. This fact has not, however, entirely abolished the parental obligation. It has done so only to the extent provided by statute. There is no apparent reason why the state should not provide that the parent's financial responsibility created during her lifetime should not continue as an

obligation of her estate. The fact that, because of circumstances, the obligation created during her lifetime was not then collected did not extinguish it as a valid claim against her estate in an amount within the statute of limitations.

The construction of sections 6650 et seq. of the Welfare and Institutions Code as above outlined and as dealt with in the prior hearing, was not attacked in the petition for rehearing. But the defendant now argues that if it was the intention of the Legislature to impose an absolute liability on the named relatives of mentally ill persons the statutory provisions are unconstitutional. The contention is based on alleged arbitrary and discriminatory classification in that the responsible relatives of other groups of persons receiving public assistance are claimed to have only a conditional obligation to furnish support and maintenance based upon their ability to pay.

Article I, section 11 of the California Constitution requires that all laws of a general nature have a uniform operation. This has been held generally to require a reasonable classification of persons upon whom the law is to operate. The classification must be one that is founded upon some natural or intrinsic or constitutional distinction. (*Serve Yourself Gas etc. Assn.* v. *Brock*, 39 Cal.2d 813, 820 [249 P.2d 545] ; *City of Pasadena* v. *Stimson*, 91 Cal. 238, 251-252 [27 P. 604].) Likewise, those within the class, that is those persons similarly situated with respect to that law, must be subjected to equal burdens. (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279, 284 [298 P. 481].) The clause of the Fourteenth Amendment to the federal Constitution which prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws" has been similarly construed.

Equal protection of the law is not afforded when a statute imposes a particular disability upon a class arbitrarily selected from a larger number of persons, all of whom stand in the same relation to the burden imposed, and between which class and the others no reasonable distinction or substantial difference can be found to warrant the inclusion of the one and the exclusion of the other. (*Franchise Motor Freight Assn.* v. *Seavey*, 196 Cal. 77, 81 [235 P. 1000] ; *City of Pasadena* v. *Stimson, supra,* 91 Cal. 238; 11 Cal.Jur.2d 719, and cases cited there.) The classification in the present case would be justified if there is a reasonable distinction or substantial difference which warrants the exclusion of the class of which the decedent was a member from those who

owed only a conditional obligation to support and maintain a relative in a public institution. It further appears that the distinction upon which classification is based or upon which different treatment is accorded must have some reasonable and substantial relation to the purpose for which the legislation was designed. (*Serve Yourself Gas etc. Assn.* v. *Brock, supra,* 39 Cal.2d 813; *Sei Fujii* v. *State,* 38 Cal.2d 718 [242 P.2d 617]; 11 Cal.Jur.2d 719, and cases there cited.) The obvious purpose of the particular provisions of the statute here involved is to minimize the cost to the state and its agencies in providing assistance to the needy and distressed, by exacting contributions from persons standing in close relationship to those assisted. Accordingly, the classification which is claimed to have placed the deceased in a class apart must be shown to have a reasonable and substantial relation to the accomplishment of that purpose if the code provisions which are attacked are to withstand the claims of invalidity.

The defendant's claim of improper classification is based, first, upon the whole of the Welfare and Institutions Code. The purpose of the code ''is to provide for protection, care, and assistance to the people of the State in need thereof, and to promote the welfare and happiness of all of the people of the State by providing public assistance to all of its needy and distressed. . . .'' (Welf. & Inst. Code, § 19.) It appears that the code deals with six categories of persons who may receive the assistance of the state: children in division 2, youths in division 2.5, aged persons in division 3, indigent persons in division 4, physically handicapped persons in division 5, and mentally irresponsible persons in division 6. The defendant claims that in each of the first five categories where a relative or relatives of persons receiving assistance are made liable for their support and maintenance the obligation, in the express language of the code, is made conditional on ability to pay.

 It is to be noted that the support of minor children by their parents is provided for in the Civil Code. Section 196 of that code provides that ''The parent entitled to the custody of a child must give him support and education suitable to his circumstances. . . .'' Section 205 provides for means of recovery by a county from the estate of a parent for the support of a child. Section 207 provides for a means of recovery against a parent for support furnished by a third person to a child under the parent's charge. The obligation to support a

child is an absolute one and accordingly provisions in the Welfare and Institutions Code relating to reimbursement to public agencies for support and maintenance furnished are intended to provide only a means of collecting an obligation which the law already has imposed. Thus, references to ability to pay in such provisions are a condition only to collectibility, the obligation itself being an absolute one. Provisions in section 6650 et seq. of the Welfare and Institutions Code are herein construed to a similar effect.

In accordance with the foregoing the plaintiff contends, *arguendo*, that section 864 in division 2 of the Welfare and Institutions Code makes ability to pay a condition prior to the making of an order by the juvenile court for the support of a ward. That section provides: "If the court finds that there are earnings, property, or estate of such ward or other minor person, sufficient therefor, or that the parents or guardian of such ward or other minor person, or other person liable for the support of such ward, or other minor person is able to pay, either in whole or in part, for the expense of his support and maintenance, the court shall further order, and direct that the county be reimbursed, in whole or in part, for its expense of support and maintenance of him. . . ."

A similar contention is made as to the purpose of section 1506.5 in division 2 of the Welfare and Institutions Code, relating to assistance furnished to needy children. That section provides that suit may be brought against a parent to recover the amount of assistance granted a needy child "if the parent of a recipient has been gainfully employed or has had sufficient assets to enable him to reasonably assist the recipient during the period in which the child was receiving aid. . . ."

While the obligation to support a minor child is an absolute one and for that reason not distinguishable from that imposed on the decedent in the present case, nevertheless there are grounds which justify a different classification of minor children and certain other groups receiving assistance for purposes of seeking recovery for assistance from responsible relatives. Statutory provisions relating to needy children in division 2 (§§ 1501.5, 1504, 1511), to aged persons in division 3 (§§ 2024 and 2025) and to physically handicapped persons in division 5 (§§ 3004 and 3007), all operate within the provisions of the Federal Social Security Act, and funds utilized in those programs are derived from federal sources as well as from local governments. Accordingly, there is not as urgent a necessity that the local government recover the

funds expended in such programs in order that its costs be minimized and that the purpose of the recovery provisions be realized. This is urged as a reasonable ground upon which to justify the imposition of a conditional liability of responsible relatives of persons receiving assistance in those programs as against the responsible relatives of persons receiving assistance under a program not subsidized by federal funds, as in the present case.

In division 3, dealing with assistance given to aged persons, section 2181 provides a ''Relatives' Contribution Scale'' for the relatives of aged persons making application for assistance. No contribution is required where a relative's financial obligations are such that he may be deemed not to have the ability to contribute. In section 2224 it is provided that action may be undertaken against a ''spouse or adult child found by the board of supervisors pecuniarily able to support said person. . . .'' This plan is one which is supported by the federal Social Security program, as stated, and for that reason is properly classified apart from those persons who are mentally ill. Furthermore, a recipient of aid under this program need not be a person wholly without assets. He may be a person who has limited means of support and may have real property, the assessed value of which does not exceed $5,000 and personal property not in excess of $1,200. (§§ 2163, 2164.) Such an estate may exceed that of a responsible relative who is required to contribute to the aged person's support. Such a situation further justifies the imposition of a conditional liability on responsible relatives.

In division 5, dealing with aid to the needy blind, section 3088 provides that if a recipient of aid thereunder has a spouse, parent, or adult child, ''pecuniarily able to support him'' and who fails to furnish support, the board of supervisors may request that proceedings be commenced against that person. Again, as this program is supported by federal funds, there is a valid basis for discrimination in seeking reimbursement from responsible relatives.

As to other assistance programs not supported in part by the federal government, there is at the present time no obligation, absolute or conditional, for the reimbursement of the cost of support and maintenance of youths committed to the Youth Authority under the provisions of division 2.5 (See Welf. & Inst. Code, § 1742). However, there appear to be natural and intrinsic reasons for classifying persons

committed under the provisions of division 2.5 differently from those who are mentally ill. Section 1700 of the Welfare and Institutions Code states that the ''purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. . . .'' The Authority performs functions which in many instances would have to be performed by our penal institutions. As such it does not impose an additional drain on the financial resources of government for which reimbursement may properly be sought. Furthermore, persons committed thereto are gainfully employed (Welf. & Inst. Code, §§ 1760.5 and 1760.6), and for that reason constitute a lesser financial burden. Accordingly, there is good reason why government should not look to responsible relatives for the support and maintenance of youths committed to the Authority.

In division 4, relating to aid rendered to indigent persons, section 2576 provides in part that the board of supervisors shall determine if the spouse, parent or adult child of a recipient of aid has ''the financial ability to support or contribute to the support of the recipient and were pecuniarily able to support or contribute to the support of the recipient during the time aid was rendered,'' and if in the opinion of the board ''pecuniary ability existed when the aid was given and exists when the matter comes before the board of supervisors'' the board shall institute proceedings against the responsible relative or relatives. The foregoing is claimed to constitute a conditional obligation to pay on the part of responsible relatives. However, it does not constitute the whole of section 2576. That section commences: ''All aid rendered by the county under this chapter shall be a charge against the spouse, parent and adult child of the recipient thereof and the county rendering aid shall be entitled to reimbursement therefor.'' This would appear to impose an absolute liability on the named relatives. (See *County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d 634.) The further provisions of the section would seem to relate only to the collectibility of the obligation and to condition proceedings in that regard on ability to pay. Again, the foregoing construction is consistent with that attached to sections 6650 et seq.

In addition to an asserted improper classification as to the relatives of persons receiving assistance under the provisions of the various divisions of the Welfare and Institu-

tions Code, the defendant further claims that within division 6, itself, dealing only with mentally irresponsible persons, those persons in the class of the decedent have been discriminated against. However, in section 5077 of the Welfare and Institutions Code dealing with a person determined "to be mentally disordered and bordering on mental illness but not dangerously mentally ill" (Welf. & Inst. Code, § 5076), responsible relatives are unconditionally liable for the expenses incurred by a county in maintaining such mentally ill person. Section 5077 states that the cost of maintenance of such a person "shall be defrayed out of the estate of the patient so committed or shall be a charge upon his relatives liable for his maintenance." Ability to pay is not even made a condition to collectibility in that case, it being further provided in that section that all "funds expended by the county for the maintenance of such patient . . . shall be a charge against such patient or against his husband, wife, father, mother, or children, in the order named and the county shall be entitled to reimbursement therefor."

Furthermore, in section 5402.5 of the Welfare and Institutions Code, relating to the commitment of dipsomaniacs and inebriates, it is provided that the "cost of maintenance of a person committed or confined under the provisions of section 5402 to a branch of the county jail, in a sum to be fixed by the court at the time of the commitment or confinement, shall be a charge against the person committed or confined, or if such person be indigent against his relatives liable for his maintenance." The foregoing seems to impose an absolute liability to pay although later provisions in the section make collectibility conditional upon ability to pay. Again such an interpretation is consistent with sections 6650 et seq.

From the foregoing sections of division 6 of the Welfare and Institutions Code it does not appear that there is a discriminatory classification as against the relatives of mentally ill persons committed under the provisions of sections 6650 et seq. There is a sound basis for the plaintiff's contention that responsible relatives in all cases, including the decedent in the present case, are treated in substantially the same manner insofar as their obligation to support is concerned. In all cases, it is contended, the obligation to support is an absolute one, and it is only the collectibility of that obligation which is made conditional upon the ability of particular relatives and others to pay. The present case, insofar as research has disclosed, is the first in which this court has dealt with

this specific question in relation to any of the various assistance programs in the Welfare and Institutions Code. It is obvious that the various statutory provisions have not dealt with the many and complex problems of humanitarian relief in the same way. Such a requirement is not laid upon legislative action and discrimination does not result if the classification is reasonable. As stated in *People* v. *Western Fruit Growers, Inc.,* 22 Cal.2d 494, at pages 506-507 [140 P.2d 13] : " [T]he mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition. The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant classification will not be overthrown. [Citations.] When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. [Citations.] " In view of the injunction laid upon us to uphold the constitutionality of a statute if it can be done on any reasonable theory, it is concluded that the present claim of unlawful classification may not properly be sustained.

The defendant further contends that sections 6650 et seq. of the Welfare and Institutions Code are unconstitutional in that they violate the due process clauses of both the state and federal Constitutions. This contention is based on the claim that the decedent could not, of her own initiative, have obtained an administrative determination of her ability to pay by the Director of Mental Hygiene, or to have obtained a judicial review of the proceedings, had she obtained the administrative action.

No attempt was made by the decedent during her lifetime to obtain the administrative determination the lack of which the defendant now complains. In *Estate of Stobie,* 30 Cal. App.2d 525 [86 P.2d 883], where sections 6650 et seq. of the Welfare and Institutions Code were involved, the court stated : "There is a presumption that an administrative officer, charged by the legislature with an administrative duty, will perform that duty in accordance with the Constitution and laws of the state of California. Such a presumption will prevail until it is attacked and some evidence presented that the

officer has been guilty of dereliction and that the action taken by him has been arbitrary or discriminatory. (*People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 P. 3].)'' ▆ It must be presumed in the present case that if an application had been made for a determination of the decedent's inability to pay, and satisfactory proof presented, the director might have reduced, cancelled or remitted the amount to be paid in accordance with section 6651.

▆ As to the claim that a judicial review of administrative action is not provided, and hence constitutes a denial of due process, it is further stated in *Estate of Stobie, supra*, at page 530: ''The fact that this case is before this court is sufficient answer to appellant's argument of lack of due process of law. The statute requires the state to go into the superior court to collect the money due it. There the guardian is brought into court, after notice, and is given a tribunal in which to present his evidence and, in any lawful manner, resist the claim against the estate. A right of appeal from the judgment is given. Due process of law can require no more.'' (See also *County of Los Angeles* v. *Frisbie, supra*, 19 Cal.2d 634, 645.)

▆ The defendant finally contends that sections 6650 et seq. of the Welfare and Institutions Code are unconstitutional in that they constitute a taking of private property without just compensation. This contention was refuted in *State Commission in Lunacy* v. *Eldridge*, 7 Cal.App. 298, where the court stated at page 304 [94 P. 597, 600]: ''. . . certainly the payment of the expense or a part thereof, for the care and maintenance of one's relative, incapable of taking care of himself, could not be the taking of private property for a public use without compensation, since for the expenditure required a substantial equivalent is given by the agents of the state having management of the institution. . . .''

The defendant has failed to establish any good reason why the estate of the decedent should not defray the charges incurred during the four years immediately preceding her death.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Spence, J., and McComb, J., concurred.

SCHAUER, J., Dissenting.—The majority's holding that the liability mentioned in section 6650 of the Welfare and Institutions Code is unconditionally imposed, regardless of

ability to pay, is, in my view, neither required by the statute. nor, if we read the section in context, is the holding reasonable. The majority's construction is not reasonable in that (1) other provisions of the subject legislative plan indicate that the liability of relatives to reimburse the state is conditioned on ability to pay and (2) substantial portions of the scheme, vital to the integrity of its objectives, are rendered constitutionally void by the majority holding.

As hereinafter developed, the majority construction offends not only the salutary statutory plan but converts it into an implement whereby private property may be taken without compensation, an arbitrary classification is made, equal protection of the laws is denied, and a gift of "public money or thing of value" is authorized.

The Welfare and Institutions Code, with its comprehensive provisions for the liability of responsible relatives to reimburse the appropriate public agency for the support of the needy, is the measure of the subject liability; its sections, read together, constitute a complete system which occupies the field of such liability. (See *County of San Bernardino* v. *Simmons* (1956), 46 Cal.2d 394, 399 [296 P.2d 329] ; *County of Contra Costa* v. *Lasky* (1954), 43 Cal.2d 506, 509 [275 P.2d 452].) When the pertinent portions of the code are read together it appears that the liability of the responsible relatives, declared in general terms but not fully defined or delimited in section 6650, is subject to the condition, stated in section 6653, that investigation disclose, and official determination be made, that "such relative or relatives are in fact financially able to pay such charges."

It is, of course, to be presumed that "official duty has been regularly performed" (Code Civ. Proc., § 1963, subd. 15), and, accordingly, that the Director of Mental Hygiene and the Departments of Mental Hygiene and of Institutions performed the duties imposed upon them by section 6651 of the Welfare and Institutions Code. That section provides that "The monthly rate for the care, support, and maintenance of all mentally ill or insane persons and inebriates at the state hospitals for the mentally ill *where there is liability to pay* for such care, support, and maintenance, shall be[reviewed once each fiscal year and fixed at the state-wide average per capita cost of maintaining patients in all state hospitals for the preceding fiscal year, as[1]] determined by the Director of

---

[1]The language in brackets was added by 1954 amendment. Other amendments, not here material, were also made in 1953 and 1954.

Mental Hygiene, and *shall be payable in advance. . . .* The Director of Mental Hygiene may reduce, cancel or remit the amount to be paid by the estate or the relatives, as the case may be . . . on satisfactory proof that the estate or relatives . . . are unable to pay the cost of such care, support, and maintenance. . . .'' (Italics added.)

In section 6652 of the same code it is further provided that ''The Department of Mental Hygiene *shall collect* all the costs and charges mentioned in Section 6650 . . .'' (Italics added.) Further defining the powers and indicating the duties of the Department, section 6658 provides, ''The Department of Mental Hygiene may in its own name . . . bring an action to recover for the use and benefit of any state hospital or for the State the amount due for the care, support, maintenance, and expenses of any patient or inmate therein, against any county, or officer thereof, or against any person, guardian, or relative, liable for such care, support, maintenance, or expenses.''

Inasmuch as we must presume that the Director and the Department faithfully performed the duties imposed upon them, and inasmuch as the record shows that the Department did carry out the mandatory duty imposed upon it by section 6653 to ''make an investigation . . . and . . . determine whether . . . such relative or relatives are in fact financially able to pay such charges,'' but made no attempt to collect any charges from the relative here involved during her lifetime, we are further bound to accept the record as establishing that the Department actually determined that such relative was in fact *not* financially able to pay such charges.

Further, as already noted hereinabove, section 6651 of the code provides that ''The Director of Mental Hygiene may reduce, cancel or remit the amount to be paid by the estate or the relatives, as the case may be, liable for the care . . . of any mentally ill or insane person . . . who is a patient of a state hospital for the mentally ill, on satisfactory proof that the estate or relatives, as the case may be, are unable to pay the cost of such care . . .'' The power to ''reduce, cancel or remit'' must, if it is to survive constitutional tests, be correlative to the power to impose, and where such liability is not ascertained and imposed during the lifetime of the responsible relative it does not appear consonant with legislative intent to impose it after the relative's death. Certainly where, as here, a determination of no liability has been made during the relative's lifetime, the post mortem attempt to surcharge that relative's estate should fail. Upon a proper construction of

the statutory plan, and on the facts appearing in this record, there was never an occasion for the director or the department to "cancel or remit the amount to be paid" because no "amount to be paid" was ever fixed and, hence, never accrued or became a liability of the deceased.

I would not analogize *Estate of Phipps* (1952), 112 Cal. App.2d 732 [247 P.2d 409, 33 A.L.R.2d 1251] (majority opinion, *ante*, pp. 752-753.) The question there was the liability of the estate of an incompetent for care furnished the incompetent at a State hospital prior to the acquisition of any estate by the incompetent. It may fairly be said that the liability of the estate of the incompetent under section 6655 of the Welfare and Institutions Code, once the incompetent has died, is "unconditional" as opposed to the conditionally imposed liability of the estate of a responsible relative under sections 6650, 6651, and 6653. It is obvious that the estate of the incompetent, *in the absence* of statute, would be primarily liable for the incompetent's own support. It is equally clear that the estate of a relative (other than a spouse) would not ordinarily be liable for the support of an adult. In the Phipps case it is said (p. 735 of 112 Cal.App.2d) that "The liability of both [the estate of the incompetent and the responsible relatives] is there, although there may be no collectibility due to absence of estate or funds." This statement, insofar as it indicates that the estate of a responsible relative would be liable even though during the lifetime of the relative there was no determination of ability to pay, is mere obiter and was pronounced in a case not analogically close to the case at bar. Manifestly, the liability of a decedent's estate for necessaries of life furnished the decedent himself during his lifetime is quite a different thing from seeking to impose liability for such necessaries upon another person or the latter's estate.

From what has been said it is apparent that I disagree with *Department of Mental Hygiene* v. *Shane* (1956), 142 Cal.App. 2d Supp. 881 [299 P.2d 747] (majority opinion, *ante*, p. 752). There, there was no evidence that the department ever made demand upon the decedent, during his lifetime, for the support of his insane son. After his death the department filed a claim in his estate. The court said (p. 883 [1] of 142 Cal.App. 2d Supp.), "We don't see any connection between the fact that the decedent did not have the ability to pay for his son, the inmate, while he was living and the fact that his estate would be liable." However, it appears that there is a connection

between the fact that the department was not shown to have made claim to payments and established the ability of the decedent to make such payments during the period for which support was sought rather than waiting to make claim therefor after (if its theory be accepted) the asserted liability had accrued and the responsible relative had died.

As stated in the majority opinion (*ante*, p. 750), section 2176 of the Political Code when enacted (Stats. 1903, p. 505) "clearly made ability to pay a condition of liability." It provided, in material part, that "The husband, wife, father, mother, or children of an insane person, *if of sufficient ability,* . . . shall be liable for the care, support and maintenance of any insane person in a state hospital for the insane . . ." (Italics added.) When the Legislature deleted the phrase "if of sufficient ability" in 1909 (Stats. 1909, p. 71) it added to the Political Code a form of commitment which expressly provided for a statement of financial ability (Pol. Code, § 2171, Stats. 1909, p. 70). And in 1921, as the majority opinion points out, the Legislature added to section 2176 of the Political Code the provision that "The commission shall . . . make an investigation to determine whether the patient has any relative or relatives as mentioned in this section, and who are herein made responsible for payment for the care . . . of such patient, . . . and shall ascertain the financial condition of such relative or relatives, to determine whether in each case such relative or relatives are in fact financially able to pay such charges." (Stats. 1921, p. 1335.) It thus appears that the Legislature has always had in mind financial ability as a condition of the liability of responsible relatives.

Moreover, with respect to the question posed by plaintiff's contention that sections 6650 et seq. of the Welfare and Institutions Code are unconstitutional in that they constitute a taking of private property without just compensation, it may first be noted that *State Commission in Lunacy* v. *Eldridge* (1908), 7 Cal.App. 298, 304 [94 P. 597, 600], relied upon by the majority (*ante*, p. 761), was decided at a time when, as already mentioned herein, section 2176 of the Political Code "clearly made ability to pay a condition of liability," and hence constitutes no authority whatsoever for holding that the imposition of unconditional liability is permissible under our constitutional guaranties. Further, I am in accord with the view expressed by Chief Justice Beatty of this (Supreme) court in dissenting from the order denying a hearing in the Eldridge case, "for the reason that there is, in my

opinion, a serious question as to the constitutionality of an act of the legislature which seeks to impose the obligation of support upon the father or mother of an adult son who, at the instance of the state, has been committed to an insane asylum because he is a dangerous lunatic.'' (P. 307 of 7 Cal. App.)

Particularly do I believe that there is a serious question of the constitutional right of the Legislature to impose liability for the maintenance of an adult person upon any other person who has not voluntarily (as in the case of marriage, for example) assumed an obligation to answer for such support and who in the nature of things, if the legislation be sustained, can do nothing to secure relief therefrom short of himself joining the class of needy and impoverished persons whom the welfare legislation ostensibly seeks to assist. That the Legislature did not intend this result is made obvious by the provision of section 6655 that even the estate of the patient himself shall not be drained beyond reasonable ability to pay if there is likelihood of his recovery. (''Payment for the care, support, maintenance, and expenses of a person at a State hospital shall not be exacted . . . if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital.'') Do the majority of this court intend to tell the people of California that this state is more concerned in protecting the estate and solvency of the incompetent than it is in conserving the independence of his relatives? Do they mean to hold that the incompetent's estate may be left intact to ensure his financial independence at the same time that absolute liability is imposed on the relatives, regardless of ability to pay? That any nonconsenting adult person should have imposed upon him, by act of the Legislature, absolute responsibility for support and maintenance of another adult over whom and whose estate the law grants him no correlative right of control or conservation, suggests to me not only the taking of property without due process and denial of equal protection of the laws, but an open invitation from the State to irresponsibility both by those upon whom liability is sought to be imposed and by those in whose favor it is sought to be created. I am impelled to the view that these basic constitutional questions deserve more thorough exploration than has been accorded them in the majority opinion.

Another grave question appears on the face of the majority

opinion. It is there declared (*ante*, p. 751) that "while an unconditional liability is imposed, the amounts due thereunder may be reduced, remitted, or cancelled by administrative action . . . following an investigation and determination of inability to pay." Would not remission or cancellation of an unconditional debt owing to the State of California constitute a gift of "public money or thing of value" in violation of section 31 of article IV of the Constitution of California? It is our duty to construe statutes, which reasonably admit of such construction, so as to avoid running afoul of constitutional proscription. We would accomplish that result here by construing the statute as making financial ability a condition of liability. Certainly we should apply that very obvious and apparently contemplated construction here. (*Bodinson Mfg. Co.* v. *California Emp. Com.* (1941), 17 Cal.2d 321, 326-327 [6] [109 P.2d 935]; 11 Cal.Jur.2d 384, and authorities there cited.)

In addition, if remission is to be permitted by administrative action upon a determination of inability to pay, then, as likewise mentioned by Chief Justice Beatty in the Eldridge case (*State Commission in Lunacy* v. *Eldridge* (1908), *supra*, 7 Cal.App. 298, 307-308), by what standard is ability to pay to be determined? Does the support obligation "continue until the father or mother, or wife or child, has been stripped of all his or her possessions except property exempt from execution, or has the court or commission discretion to say how far the exaction shall be pressed? Upon the former supposition the operation of the law would in many instances result in grievous hardship, upon the latter its operation would be lax or oppressive according to the idiosyncrasies of the officers, executive and judicial, charged with its enforcement." And we may add, does this absolute liability concept intend that the available relatives shall themselves be reduced to the point of needing support from the State when no further solvent relatives can be found? Lastly, for the purposes of this dissent, but by no means all that might be said on the subject, it is noted that the majority opinion strains to the end it reaches against the express provision of section 6651 that "The monthly rate for the care, support, and maintenance of all mentally ill or insane persons and inebriates at the state hospitals for the mentally ill where there is liability to pay for such care, support, and maintenance, shall be . . . determined by the Director of Mental Hygiene, and *shall be payable in advance.* . . ." (Italics added.)

For the reasons above stated, I cannot concur in the philosophy, the reasoning, or the law of the majority opinion. The judgment should be reversed.

Carter, J., concurred.