[Civ. No. 25734. Second Dist., Div. One. Dec. 28, 1961.]

DEPARTMENT OF MENTAL HYGIENE, Plaintiff and Respondent, v. MAURICE BLACK, as Administrator, etc., Defendant and Appellant.

Samuel R. Tannenbaum for Defendant and Appellant.

Stanley Mosk, Attorney General, and Henry G. Ullerich, Deputy Attorney General, for plaintiff and Respondent.

LILLIE, J.—The Department of Mental Hygiene instituted this action to recover from the estate of the mother of a mentally ill person the cost of the latter's support in a state hospital. Judgment was given the department as prayed for, and defendant appeals.

The material facts are undisputed. From September 11, 1944, to May 6, 1958, the daughter was a resident patient at Camarillo State Hospital; released on the last mentioned date, she was recommitted on October 29, 1959. Celia Black, the incompetent's mother, died on August 16, 1959. From her estate there is available for distribution to her three children, the incompetent and two brothers, the sum of $5,794.97—the incompetent's share thus being $1,900 approximately. As authorized by section 6651, Welfare and Institutions Code, the Director of Mental Hygiene determined the rates (the reasonableness of which is not challenged) for the incompetent's care, support and maintenance as follows: $118 a month from August 17 to December 31, 1955; $122 a month from January 1 to December 31, 1956; $134 a month from January 1 to December 31, 1957; and $156 a month from January 1 to May 6, 1958. None of these charges, totaling $4,255.29, were paid to the department.

The present action was commenced on July 20, 1960, within one year from the issuance to defendant of letters of administration.

The mother's administrator, understandably deeming it his duty, sought to insulate the distributive shares of the incompetent's brothers from the claims asserted by the department. Among other affirmative defenses raised in his answer, he alleged that (1) the department's claim was barred by its failure to present a claim within six months (Prob. Code, § 707); (2) since the incompetent was "primarily liable," the department had no right of recovery against her mother's estate; and (3) a portion of the claim was barred by the two-year statute of limitations (Code Civ. Proc., § 339). Only (2) and (3) are argued on this appeal; as for (3), although the inapplicability of section 339 was conceded upon the trial, reliance was placed on other statutes of limitation said to govern the facts at bar.

Section 6650, Welfare and Institutions Code, fixes the liability for expenses incident to the care and support of incompetents at state hospitals. Thereunder not only are the assets of the incompetent made chargeable for such expenses, but additionally "The husband, wife, father, mother, or children of a mentally ill person . . . and the administrators of their estates, and the estate of such mentally ill person . . . shall be liable for his care, support, and maintenance . . ."; furthermore, "The liability of such persons and estates shall

be a *joint and several* liability. . . ." (Emphasis added.) In *Department of Mental Hygiene* v. *McGilvery,* 50 Cal.2d 742, 749 [329 P.2d 689], it was determined that this liability was unconditional and absolute. ██ Particularly pertinent here is the following statement in the *McGilvery* case: "From time immemorial it has been the natural primary obligation of the parent to bear the financial burden of caring for an afflicted child. In this humanitarian age the state has assumed that obligation in the absence of the parent's ability to do so. This fact has not, however, entirely abolished the parental obligation. There is no apparent reason why the state should not provide that the parent's financial responsibility created during her lifetime should not continue as an obligation of her estate. The fact that, because of circumstances, the obligation created during her lifetime was not then collected did not extinguish it as a valid claim against her estate in an amount within the statute of limitations." (Pp. 753-754.) Were it not for other provisions of the applicable legislation (Welf. & Inst. Code, § 6650 et seq.), relied on by appellant, the above pronouncements, statutory and judicial, might well be dispositive of the controversy except for the claimed bar of the statute of limitations. We shall now refer to these other provisions.

Section 6655 reads in part as follows: "If any person committed to a State mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care, support, maintenance, and necessary expenses at the mental hospital to the extent of the estate." The same section then establishes the procedures to be followed where a guardian of the incompetent has been appointed and collection of its charges is sought by the department. The final paragraph of section 6655 provides: "Payment for the care, support, maintenance, and expenses of person at a State hospital shall not be exacted, however, if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital. If a certificate from the medical superintendent of the State hospital in which the person is confined as a patient is filed in the office of the county clerk with the papers of the guardianship proceedings of the patient, in which certificate the medical superintendent states that the patient is suffering from a chronic form of insanity, and that in his opinion a recovery is beyond reasonable hope and that the

patient will in all probability continue to be a charge in a State hospital until death, such certificate shall be prima facie evidence that the patient is not likely to recover or to be released from the hospital, and the guardian shall pay the amount due for his care . . .''

Emphasizing certain of the foregoing language that the guardian shall pay for the incompetent's care *"to the extent of the estate,"* appellant quotes from *Estate of Phipps*, 112 Cal.App.2d 732, 735 [247 P.2d 409, 33 A.L.R.2d 1251], that ''. . . it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so.'' He states further that there is a possibility (albeit remote) that the incompetent may be returned to her place in society, in which event her distributive share of her mother's estate should not be touched. True, and even though permitted by section 6655, no medical certificate pertaining to the chronic nature of the incompetent's illness was ever filed. As will be pointed out, however, it was unnecessary to do so as a condition to recovery of the department's claims; furthermore, the certificate is made only prima facie evidence by the terms of the pertinent section.

The opening paragraph of section 6655 is headed ''Payment by Guardian,'' while the remaining two paragraphs assume the existence of a guardianship proceeding. No such proceeding was ever instituted for the present incompetent, nor was it incumbent on the department to do so.[1] Section 6655, contrary to appellant's suggestion, does not fix the liability of an incompetent in these matters; it serves another function. *Estate of Phipps, supra*, p. 735: ''It is evident that section 6650 determines the obligation. Generally the other sections have to do with determining the amount and method of collection.'' Thus, section 6652 charges the department with the responsibility of collecting the costs and charges mentioned in section 6650 and provides that it ''may take such action as is necessary to effect their collection . . .'' Among other collection procedures provided for, the department may institute an independent action ''against any person, guardian, or

[1]Section 6660 provides that ''If any incompetent person, who has no guardian and who has been committed to the Department of Mental Hygiene . . . is the owner of any property, the Department . . . *may* apply to a court of competent jurisdiction for its appointment as guardian of the estate of such incompetent person.'' (Emphasis added.) The purpose of this section, it has been said, is to place the state in a position to reimburse itself for the incompetent's maintenance. (*Estate of Abdale*, 59 Cal.App.2d 445 [139 P.2d 347].)

relative'' liable for the incompetent's care and maintenance. (Welf. & Inst. Code, § 6658.) This, it appears, is precisely what was done at bar. The incompetent's mother being a person liable for her maintenance and care (Welf. & Inst. Code, § 6650), there is thus no merit to the first of appellant's contentions that the personal assets of the incompetent patient must first be exhausted before liability is imposed on responsible relatives.

 The judgment appealed from was for the cost of the incompetent's care from August 17, 1955, through May 6, 1958. It is conceded that section 345, Code of Civil Procedure, is applicable, which section provides, *inter alia,* that actions for the recovery of money due on account of the support of patients at state hospitals may be commenced at any time ''within four years after the accrual of the same.'' Appellant now argues that the four-year period should be computed (back) from the date of the filing of the department's complaint herein (July 20, 1960) and not from the date of his intestate's death (August 16, 1959). The point is not well taken. The debt here sought to be enforced is a statutory liability accruing under the provisions of the Welfare and Institutions Code. ''It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitation then begins to run.'' (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].) Section 573 of the Probate Code, prior to its 1961 amendment, provided in part that ''. . . all actions by the State of California or any political subdivision thereof founded upon any statutory liability of any person for support, maintenance, aid, care or necessaries furnished to him or to his spouse, relatives or kindred, may be maintained against executors and administrators in all cases in which the same might have been maintained against their respective testators or intestates.'' By section 353, Code of Civil Procedure, it is provided that ''If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representatives, after the expiration of that time, and within one year after the issuing of letters testamentary or of administration.'' As noted earlier, the present action was commenced within one year from the issuance of letters of administration, and the court so found (although erroneously referring to them as ''letters testamentary''). The judgment, therefore, properly included

all charges owing and unpaid within four years prior to the intestate's death.

Little need be said with respect to the department's failure to file a claim (Prob. Code, § 707), since appellant has abandoned the point. However, in *Department of Mental Hygiene* v. *Rosse*, 187 Cal.App.2d 283, 287 [9 Cal.Rptr. 589], the court stated: ''We are satisfied that the debt to the state is a statutory liability, that no claim was required to be filed, and that Probate Code, sections 707 and 714, do not apply.'' The holding in that case, on facts similar to those at bar, was also to the effect that ''The suit was filed well within the one year provided by Code of Civil Procedure, section 353, and it was not barred.''

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.