[S. F. No. 21349.   In Bank.   Jan. 30, 1964.]

DEPARTMENT OF MENTAL HYGIENE, Plaintiff and Respondent, v. EVELYN KIRCHNER, as Administratrix, etc., Defendant and Appellant.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Defendant and Appellant.

Stanley Mosk, Attorney General, and John Carl Porter, Deputy Attorney General, for Plaintiff and Respondent.

Spencer M. Williams, County Counsel (Santa Clara), Joseph G. Schumb, Jr., Deputy County Counsel, Richard H. Hoffelt, Wilke, Fleury & Sapunor, William R. MacDougall and Jack M. Merelman as Amici Curiae on behalf of Plaintiff and Respondent.

SCHAUER, J.—Defendant administratrix appeals from a judgment on the pleadings, in the sum of $7,554.22, entered against her in an action by the Department of Mental Hygiene of the State of California to recover the alleged cost of care, support, maintenance and medical attention supplied to Auguste Schaeche, mother of defendant's intestate, as a committed inmate of a state institution for the mentally ill. ██ As will appear, we have concluded that the statute upon which the judgment is based violates the basic constitutional guaranty of equal protection of the law, and that the judgment should be reversed.

Plaintiff in its complaint alleges in substance that in January 1953 the mother, Mrs. Schaeche, was adjudged mentally ill[1] and by the court committed to Agnews[2] State Hospital where she had remained under confinement to the date the complaint was filed in April 1961; that the decedent, Ellinor Vance, was Mrs. Schaeche's daughter "and as such was legally responsible" for her committed mother's care and maintenance at Agnews; that pursuant to section 6651[3] of the Welfare and Institutions Code the Director of Mental Hygiene determined the rate for such care and maintenance,

---

[1]Welfare and Institutions Code section 5040: " 'Mentally ill persons' means persons who come within either or both of the following descriptions:

"(a) Who are of such mental condition that they are in need of supervision, treatment, care, or restraint.

"(b) Who are of such mental condition that they are dangerous to themselves or to the person or property of others, and are in need of supervision, treatment, care, or restraint."

[2]Welfare and Institutions Code section 6500: "There are in the State the following state hospitals for the care and treatment of the insane, the mentally ill, and the mentally disordered: ... 3. Agnews State Hospital near the City of San Jose. . . ."

[3]Welfare and Institutions Code section 6651: "The rate for the care, support, and maintenance of all mentally ill persons and inebriates at the state hospitals ... where there is liability to pay ... shall be reviewed each fiscal year and fixed at the statewide average per capita ... as determined by the Director of Mental Hygiene. . . ."

and "said charges were made continuously for every month" Mrs. Schaeche was a "patient" at Agnews; that for the period of August 25, 1956, through August 24, 1960, such charges totaled $7,554.22, none of which had been paid; that the daughter died on August 25, 1960, and in November 1960 plaintiff filed against the daughter's estate its creditor's claim for $7,554.22, which was rejected, and which sum plaintiff now seeks to recover.

Defendant in her answer denies that her intestate, the daughter, "was legally responsible" for the mother's care and maintenance furnished by the state at Agnews "or any other place whatsoever"; denies any indebtedness to plaintiff; and furthermore alleges that the incompetent mother herself owns (in her guardianship estate) some $11,000 in cash, to which resort should first be had before attempt is made by the state to charge her children with the costs of her care. More specifically, defendant directly challenges the right of a state to statutorily impose[4] liability upon, and collect from, one adult for the cost of supporting another adult whom the state has committed to one of its hospitals for the mentally ill or insane. Both parties moved for judgment on the pleadings, the court granted plaintiff's motion and denied that of defendant, and from the ensuing judgment defendant appeals.

In support of the judgment plaintiff department relies upon the declaration in section 6650 of the Welfare and Institutions Code that "The husband, wife, father, mother, or

---

[4]*Historical Background*:

At common law there was no liability on a child to support parents, or on parents to support an adult child. (See, e.g., *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 645-646 [11] [122 P.2d 526]; *Duffy* v. *Yordi* (1906) 149 Cal. 140, 141-142 [84 P. 838, 117 Am.St.Rep. 125, 9 Ann.Cas. 1017, 4 L.R.A. N.S. 1159] ("at common law there was no legal obligation on the part of the child to [support a parent] ... such obligation depends entirely upon statutory provisions"); *Napa State Hospital* v. *Flaherty* (1901) 134 Cal. 315, 316-317 [66 P. 322] ("The right to maintain any action against the father for the support of an adult child, if any such right exists, is purely a creation of the statute. No such right existed at common law"); 44 C.J.S., p. 175, fn. 79; p. 176, fn. 81; p. 183, fn. 79; 67 C.J.S., pp. 704-705 § 24, pp. 727-728; 39 Am.Jur., pp. 710-712; 41 Am.Jur. pp. 684-687.) We recognize that various states have undertaken from time to time to create an obligation upon children to support indigent parents and upon parents to support indigent adult children; some states have even purported to create and impose a support obligation on brothers and sisters and on grandparents and grandchildren. (See 41 Am.Jur. §§ 6-7, pp. 684-686; 67 C.J.S. § 17, p. 705; *id.*, § 24, p. 728.)

*children* of a mentally ill person or inebriate ... shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. ..." (Italics added.)

The department, citing *Guardianship of Thrasher* (1951) 105 Cal.App.2d 768 [234 P.2d 230], and *Department of Mental Hygiene* v. *Black* (1961) 198 Cal.App.2d 627 [18 Cal. Rptr. 78], asserts flatly that the liability purportedly imposed by section 6650 upon the persons therein designated is not only, in the language of the section, "a joint and several liability," but is absolute and unconditional, and that "the fact that the patient has assets of her own becomes completely immaterial." In *Thrasher* it was held (pp. 776-778 [3-8] of 105 Cal.App.2d) that the husband of an incompetent committed to a state mental hospital was under the duty to support her therein even though she had estate of her own. That case is of small help to plaintiff here; manifestly, the basic obligation and relevant status of the *husband* arose from the marriage contract to which he was a consenting party and no consideration was given to the question as to whether imposing liability upon one spouse for support of the other in a state institution denies equal protection of the law to the servient spouse. (See also *Estate of Risse* (1957) 156 Cal. App.2d 412, 421 [7] [319 P.2d 789].) However, in *Black* the court held the mother of a mentally ill person to be liable for the cost of the latter's support in a state hospital, with the declaration (p. 632 [2] of 198 Cal.App.2d) that by reason of the provisions of section 6650 there was no merit to the contention "that the personal assets of the incompetent patient must first be exhausted before liability is imposed on responsible relatives." (See also *County of Lake* v. *Forbes* (1941) 42 Cal.App.2d 744, 747 [3, 5] [109 P.2d 972], and *Janes* v. *Edwards* (1935) 4 Cal.App.2d 611, 612 [41 P.2d 370], involving other and different statutes.) We proceed to the fundamental issue tendered by the case before us.

Recently in *Department of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], the department, relying upon this same section 6650, attempted to collect from a father for the cost of care, support and maintenance in a state hospital for the mentally ill or insane of his son who had been charged with crime, but before trial of the criminal issue (and obviously without adjudication of that issue) had been found by the court to be insane and committed to such state hospital. We there held (pp. 255-256 [6]) that "The enactment and administration of laws pro-

viding for sequestration and treatment of persons in appropriate state institutions—subject of course, to the constitutional guaranties—who would endanger themselves or others if at large is a proper state function; being so, it follows that the expense of providing, operating and maintaining such institutions should (subject to reasonable exceptions *against the inmate or his estate*) be borne by the state." (Italics added.) We further held that recovery could not constitutionally be had against the father of the committed patient. This holding is dispositive of the issue before us. ▮ Whether the commitment is incidental to an alleged violation of a penal statute, as in *Hawley*, or is essentially a civil commitment as in the instant case, the purposes of confinement and treatment or care in either case encompass the protection of society from the confined person, and his own protection and possible reclamation as a productive member of the body politic. Hence the cost of maintaining the state institution, including provision of adequate care for its inmates, cannot be arbitrarily charged to one class in the society; such assessment violates the equal protection clause.

▮ Although numerous cases can be cited wherein so-called support statutes have been sustained against various attacks,[5] research has disclosed no case which squarely faced, considered, discussed and sustained[6] such statutes in the

---

[5] See, e.g., *State* v. *Bateman* (1922) 110 Kan. 546 [204 P. 682, 683 [2]]; *County of Los Angeles* v. *Frisbie* (1942) *supra*, 19 Cal.2d 634, 645-646 [11]; *Mallatt* v. *Luihn* (1956) 206 Ore. 678 [294 P.2d 871, 878-880 [3-13]]; *Department of Mental Hygiene* v. *McGilvery* (1958) 50 Cal.2d 742, 760-761 [23], [24] [329 P.2d 689]; (attacks based on asserted lack of procedural due process).

*County of Los Angeles* v. *Hurlbut* (1941) 44 Cal.App.2d 88, 92-94 [1-5] [111 P.2d 963]; *Department of Mental Hygiene* v. *McGilvery* (1958) *supra*, 50 Cal.2d 742, 754-760 [11-22]; *Mallatt* v. *Luihn* (1956), *supra*, 206 Ore. 678 [294 P.2d 871, 882 [19-25]]; *Kelley* v. *State Board of Social Welfare* (1947) 82 Cal.App.2d 627, 631-632 [2] [186 P.2d 429]; (attacks based on certain limited claims of discriminatory classification).

*Maricopa County* v. *Douglas* (1949) 69 Ariz. 35 [208 P.2d 646, 649 [8-9]] (attack based on claim of double taxation); *Department of Mental Hygiene* v. *McGilvery* (1958) *supra*, 50 Cal.2d 742, 761 [25], and *Mallatt* v. *Luihn* (1956), *supra*, 206 Ore. 678 [294 P.2d 871, 883-884 [28]]; (attacks on ground of taking private property for public use without just compensation).

*State* v. *Webber* (1955) 163 Ohio St. 598 [128 N.E.2d 3, 7 [3]], and *State* v. *Troxler* (1930) 202 Ind. 268 [173 N.E. 321, 323 [4]] (constitutional question avoided or not discussed).

[6] Contra, see *Department of Mental Hygiene* v. *Hawley* (1963) *supra*, 59 Cal.2d 247.

light of the basic question as to equal protection of the law in a case wherein it was sought to impose liability upon one person for the support of another in a state institution. No such constitutional issue appears to have received either consideration or documented resolution in *Department of Mental Hygiene* v. *McGilvery* (1958) *supra*, 50 Cal.2d 742 (see pp. 754-761, esp. p. 760 [22] wherein in this respect it is commented merely that "the present claim of unlawful classification may not properly be sustained"); neither is there any mention of either the United States or the California Constitutions in *Department of Mental Hygiene* v. *Shane* (1956) 142 Cal.App.2d Supp. 881 [299 P.2d 747], relied on in *McGilvery* with the statement (p. 752 [6] of 50 Cal.2d), "The present case cannot be distinguished from that case." It is axiomatic that cases are not authority for propositions not considered (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [5] [4 Cal.Rptr. 176, 351 P.2d 344]; *Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 730 [4] [146 P.2d 673, 151 A.L.R. 1062]), and the *Shane* case obviously does not give substance to *McGilvery* on the subject constitutional issue.

We note that in *Hoeper* v. *Tax Commission* (1931) 284 U.S. 206 [52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346], family relationship was not found an adequate basis for sustaining a statute under which the state attempted to assess an income tax against the husband measured in part by his wife's separate property income; the court there observed ([284 U.S.] p. 217 [76 L.Ed. p. 252, 78 A.L.R. p. 349]), "The State is forbidden to deny due process of law or *the equal protection of the laws* for *any purpose whatsoever.*" (Italics added.) Further, in *Estate of Tetsubumi Yano* (1922) 188 Cal. 645, 656-657 [14] [206 P. 995], blood relationship was found insufficient to constitute a basis for discrimination against a citizen minor whose father because of his race was (under a then held valid statute) ineligible for citizenship. (See also *Oyama* v. *State of California* (1948) 332 U.S. 633 [68 S.Ct. 269, 92 L.Ed. 249].) It is established in this state that the mere presence of wealth or lack thereof in an individual citizen cannot be the basis for valid class discrimination (*Dribin* v. *Superior Court* (1951) 37 Cal.2d 345, 348-350[1] [231 P.2d 809, 24 A.L.R.2d 864] [holding that a statute purporting to authorize a divorce from an insane spouse but limiting it to only those who could prove financial responsibility, constituted "arbitrary and unreasonable class discrimination"]) and in

the same case (at p. 352 [11]) we declared "It is elementary that 'The insane have always been regarded as subject to control on the part of the state, *both for their protection and for the protection of others.*'" (Italics added.)

Lastly, in resolving the issue now before us, we need not blind ourselves to the social evolution which has been developing during the past half century; it has brought expanded recognition of the *parens patriae* principle (see 44 C.J.S. § 3, p. 48; 67 C.J.S. 624; 31 Words & Phrases 99-101) and other social responsibilities, including The California Rehabilitation Center Act (added Stats. 1961, ch. 850, p. 2228) and divers other public welfare programs to which all citizens are contributing through presumptively duly apportioned taxes. From all of this it appears that former concepts which have been suggested to uphold the imposition of support liability upon a person selected by an administrative agent from classes of relatives designated by the Legislature may well be re-examined. Illustrative of California's acceptance of this principle is the provision of section 6655 of the Welfare and Institutions Code that payment for the care and support of a patient at a state hospital "shall not be exacted ... if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital." Thus, the state evidences concern that its committed patient shall not "become a burden on the community in the event of his discharge from the hospital," but at the same time its advocacy[7] of the case at bench would seem to indicate that it cares not at all that relatives of the patient, selected by a department head, be denuded of *their* assets in order to reimburse the state for its maintenance of the patient in a tax-supported institution. Section 6650 by its terms imposes absolute liability upon, and does not even purport to vest in, the servient relatives any right of control over, or to recoup from, the assets of the patient. A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification. (See *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 237 [13] [18 Cal.Rptr. 501, 368 P.2d 101]; *Bilyeu* v. *State Employees' Retirement*

---

[7]This is not a criticism of the department or its counsel; they are merely performing to the best of their ability the duty purportedly imposed by the statute.

*System* (1962) 58 Cal.2d 618, 623 [2] [24 Cal.Rptr. 562, 375 P.2d 442].) Such a concept for the state's taking of a free man's property manifestly denies him equal protection of the law.

Anything found in *Department of Mental Hygiene* v. *McGilvery* (1958) *supra,* 50 Cal.2d 742, 754-761 [11-25] or in cases relying thereon (see e.g., *Department of Mental Hygiene* v. *Black* (1961) *supra,* 198 Cal.App.2d 627, 632 [2]; *Estate of Setzer* (1961) 192 Cal.App.2d 634, 637-638 [1] [13 Cal.Rptr. 683]) contrary to the views herein expressed must be deemed disapproved.

The judgment is reversed and the cause is remanded with directions to enter judgment for defendant.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Respondent's petition for a rehearing was denied February 26, 1964.