[Civ. No. 8418. Fourth Dist., Div. One. Apr. 28, 1967.]

In re WILLIAM JAMES SHAIEB, a Person Coming Under the Juvenile Court Law.
COUNTY OF SAN DIEGO, Plaintiff and Respondent, v. EDWARD SHAIEB et al., Defendants and Appellants.

Sayer & MacFarlane and R. D. MacFarlane for Defendants and Appellants.

Bertram McLees, Jr., County Counsel, and Lloyd M. Harmon, Jr., Deputy County Counsel, for Plaintiff and Respondent.

WHELAN, J.—The parents of William, born July 11, 1946, appeal from a judgment in favor of the County of San Diego (County) for the cost of care, support and maintenance of William while a ward of the juvenile court; and while awaiting hearing of a petition for wardship.

The judgment is based upon findings, one of which is that the parents (Shaieb) have sufficient moneys and assets to enable them to reimburse in full the cost to County for care, support and maintenance.

FACTUAL BACKGROUND

On July 18, 1963, a petition was filed to have William declared a ward under section 602, Welfare and Institutions Code.

On August 14 an order was made for his detention in Juvenile Hall based upon a finding that such detention was

necessary for the protection of the property and persons of others.

On August 15 a second petition was filed under section 602, which alleged a violation of sections 245 and 459, Penal Code; on August 16, the court found the allegations of the second petition to be true and ordered William detained pending further hearing.

On August 30 William was declared a ward and ordered in custody of the probation officer, to be placed in the home of Shaieb pending other placement.

At the hearing of August 30, the probation department recommended commitment to the Youth Authority, Shaieb opposed this with a request that William be placed in a military academy in Riverside County, of which Shaieb would pay the expense.

On September 13 an order was made that custody be taken from Shaieb, under section 726c, Welfare and Institutions Code, and that as of September 4 William be placed at the military academy in Riverside County, at no cost to County.

On June 4, 1964, a petition was filed in Riverside County Juvenile Court, alleging a violation of section 459, Penal Code, on May 13, 1964; June 18 the Riverside Juvenile Court adjudged William to be a ward and ordered the matter transferred to the San Diego Juvenile Court, and released William to Shaieb pending disposition by the San Diego Juvenile Court.

On June 19 the San Diego County Juvenile Court made an order that William be detained in Juvenile Hall upon a finding that he was likely to flee the jurisdiction.

On July 2, 1964, the San Diego Juvenile Court ordered that William be referred and committed to the Youth Authority, County to be reimbursed for his care while in the Youth Authority at not more than $25 per month.

Again Shaieb opposed the Youth Authority referral and suggested as an alternate solution that he take William on a cruise around the world.

The judgment covers reimbursement of the Youth Authority care at the rate of $25 per month from July 23, 1964 through February 18, 1965; care at Juvenile Hall from August 14 through August 29, 1963 at $17.24 per day; care at Juvenile Hall from June 19 through July 1, 1964, pending hearing, and from July 2 through July 22, 1964, pending acceptance by the Youth Authority, all at $17 per day.

The cost per day for the boy's stay at Juvenile Hall from August 14 to August 29, 1963 was derived from the total cost of maintaining the Juvenile Hall divided by population of the six months period last computed by the county auditor. It included salaries and wages of Juvenile Hall staff: superintendent, counselors, cooks, etc.; maintenance and operation; food; and probation department administrative and accounting charges.

CONTENTIONS ON APPEAL

Shaieb states his contentions thus:

1. The state (or County) may not compel the parents of a 17-year-old minor child to reimburse the County for the cost of the child's care, support or maintenance in the County institution in which he is detained or committed pursuant to an order of the juvenile court, for the protection of society.

2. Section 903, Welfare and Institutions Code, is repugnant to the mandate of article I, sections 11 and 21 of the California Constitution and of the equal protection clause of the Fourteenth Amendment to the United States Constitution; and fixes no reasonable basis of classification.

Reliance is placed mainly upon *Department of Mental Hygiene* v. *Hawley,* 59 Cal.2d 247 [28 Cal.Rptr. 718, 379 P.2d 22], and *Department of Mental Hygiene* v. *Kirchner,* 62 Cal. 2d 586 [43 Cal.Rptr. 329, 400 P.2d 321]; 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720].

*Hawley* dealt with the attempt of the state to charge the father of a 19-year-old defendant in a criminal action, charged with murder, for the care of the defendant in a hospital to which he had been committed under section 1368, Penal Code, until able to stand trial on the murder charge.

The rationale of the decision that the father might not be charged is found in this language: ''We deem it fundamental that only one who has been charged with or convicted of a crime may be made to suffer deprivation of his liberty, or be subjected to other penal sanction, for that crime. In the case at bench the person so charged and so committed is defendant's son—not defendant.'' (*Department of Mental Hygiene* v. *Hawley, supra,* 59 Cal.2d 247, 256.)

*Kirchner* held that a daughter, under the circumstances of that case, could not be held liable for the support of her mother while the mother was confined in a state mental hospital without there having been any recourse to the $11,000 cash estate of the mother. The just indignation of the court found expression in this language: ''. . . former concepts

which have been suggested to uphold the imposition of support liability upon a person selected by an administrative agent from classes of relatives designated by the Legislature may well be reexamined. Illustrative of California's acceptance of this principle is the provision of section 6655 of the Welfare and Institutions Code that payment for the care and support of a patient at a state hospital 'shall not be exacted . . . if there is likelihood of the patient's recovery or release from the hospital and payment will reduce his estate to such an extent that he is likely to become a burden on the community in the event of his discharge from the hospital.' Thus, the state evidences concern that its committed patient shall not 'become a burden on the community in the event of his discharge from the hospital,' but at the same time its advocacy of the case at bench would seem to indicate that it cares not at all that relatives of the patient, selected by a department head, be denuded of *their* assets in order to reimburse the state for its maintenance of the patient in a tax-supported institution. Section 6650 by its terms imposes absolute liability upon, and does not even purport to vest in, the servient relatives any right of control over, or to recoup from, the assets of the patient. A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification.'' (*Department of Mental Hygiene* v. *Kirchner, supra*, 60 Cal.2d 716, 722.)

Neither *Hawley* nor *Kirchner* has been held to exempt a parent in all cases from liability for care of a minor child in a state or county institution. The application of the principles stated in those cases seems to have been restricted to the factual situations dealt with in the two decisions.

Where there exists, apart from the provisions of the Welfare and Institutions Code, a legal obligation to support, that obligation may be enforced on behalf of the state or county that has furnished the needed support in a variety of situations: Against a husband under section 6650, Welfare and Institutions Code, for care of his wife in a state hospital for the insane (*Department of Mental Hygiene* v. *Kolts*, 247 Cal.App.2d 154 [55 Cal.Rptr. 437] ; *Department of Mental Hygiene* v. *O'Connor*, 246 Cal.App.2d 24 [54 Cal.Rptr. 432] ; against the parent of a feeble-minded adult to reimburse the county for payments made for care in a state hospital for the mentally deficient (*In re Dudley,* 239 Cal.App.2d 401 [48 Cal.Rptr. 790] ) ; against a parent for county hospital

care of her minor, although emancipated, son (*County of Alameda* v. *Kaiser*, 238 Cal.App.2d 815 [48 Cal.Rptr. 343]); against a parent for care of his son, a ward of the juvenile court, for the cost of care in the Juvenile Hall and in the Alameda County Boys Camp (*County of Alameda* v. *Espinoza*, 243 Cal.App.2d 534 [52 Cal.Rptr. 480]).

The cases last cited all arose after *Hawley* and *Kirchner* had been decided. Earlier, it had been held that a mother might be required to contribute to the cost of care of her daughter, a ward of the juvenile court, although the mother did not have, and under a divorce decree was not entitled to, custody (*In re Carboni*, 46 Cal.App.2d 605 [116 P.2d 453]); and that a father in similar circumstance could be required to reimburse the county for payments made by it under the statute from which section 912, Welfare and Institutions Code derives when his son had been committed to the Preston School of Industry (*Svoboda* v. *Superior Court*, 190 Cal. 727 [214 P. 440]).

Concerning the Juvenile Hall, section 851, Welfare and Institutions Code, declares: "The juvenile hall shall not be in, or connected with, any jail or prison, and shall not be deemed to be nor be treated as a penal institution. It shall be conducted in all respects as nearly like a home as possible."

In *Espinoza, supra,* 243 Cal.App.2d 543, the facts in certain particulars resemble those in the case at bench. The boy was made a ward under section 602, Welfare and Institutions Code, because of a violation of a Penal Code section that in the case of an adult would have been a felony (Pen. Code, § 217).

The boy later was sent to the Youth Authority, but the question of the county's right to reimbursement for that cost was not before the court and was not considered.

In *Espinoza,* the court said, in dealing with certain of the contentions also made in the present case by Shaieb: "It is concluded that a parent is not deprived of his property without due process of law, nor is he denied equal protection of the law by being arbitrarily charged for the cost of maintaining a county institution, when he is required to contribute, according to his ability, to the cost of the care, support and maintenance furnished to his child at such institution when the child is confined for the dual purpose of the protection of the public at large and his reformation and rehabilitation to the end that he may return to his family." (*County of Alameda* v. *Espinoza, supra,* 243 Cal.App.2d 534, 548.)

■ *Espinoza,* therefore, supplies an answer to the question of the liability of Shaieb for care, support and maintenance in the Juvenile Hall of a child made a ward of the court under section 602, Welfare and Institutions Code.

Under the authorities cited, absent the conditions existing in *Hawley* or related cases (*People* v. *Brock,* 57 Cal.2d 644 [21 Cal.Rptr. 560, 371 P.2d 296]), the question of the liability of the parent responsible for support is not affected by the question whether the institution is conducted by the state or by the county, and in the case of a parent responsible for the support of a minor whether the child has been made a ward of the juvenile court and taken from the custody of the parent against the will of the latter.

The reasoning and the rule of *St. Vincent's Institution for the Insane* v. *Davis,* 129 Cal. 17 [61 P. 476], are inapplicable to the situation in the case at bench.

There seems no valid reason why the rule should be different with regard to reimbursement of the County for $25 per month paid to the Youth Authority. It is true that in the facilities of the Youth Authority are found many persons who have been committed following a conviction of serious crime.

The commitment to the Youth Authority was by virtue of section 1736, Welfare and Institutions Code, which provides: "The juvenile court may in its discretion commit persons subject to its jurisdiction to the Authority, and the Authority may in its discretion accept such commitments."

But wards of the juvenile court committed to the Youth Authority are on a different footing from persons committed there following conviction of crime. As to the latter, the committing court has no power to suspend execution (Welf. & Inst. Code, § 1737). The juvenile court has power to set aside its commitments. (Welf. & Inst. Code, §§ 775, 779.)

If profession of the philosophy of the Juvenile Court Law is anything more than self-deception or hypocrisy, there is no difference in the ends sought to be attained for wards of the juvenile court committed as such to the Youth Authority and those cared for and maintained in other institutions or in foster homes. That philosphy is expressed in section 502, Welfare and Institutions Code, as follows: "The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties

whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes.''

We have cited *Svoboda* v. *Superior Court, supra,* 190 Cal. 727, in which a father was held liable for support of his son in the Preston School of Industry. We notice judicially that that school is now one of the facilities of the Youth Authority. Unless, therefore, *Kirchner* or *Hawley* compel a different ruling, *Svoboda* is decisive of the question.

To relieve even the parents of a delinquent child of the obligation to support the child while in a correctional institution would create an exception to long-established law in California

Sections 207, 242 and 243, Civil Code, as well as section 903 of the Welfare and Institutions Code, declare the obligation of a parent to support a child. Section 270 of the Penal Code imposes a criminal liability upon the father of a minor child who willfully omits without lawful excuse to furnish necessary clothing, food, shelter or medical attendance to the child, and imposes a like liability upon the mother should the father be dead or for any other reason fail to furnish such support.

We conclude that William's parents were properly held responsible for his care, support and maintenance.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.