ROWE *v.* DEPARTMENT OF MENTAL HYGIENE
OF THE STATE OF MARYLAND

[No. 524, September Term, 1966.]

*Decided October 10, 1967.*

*Motion for rehearing filed November 3, 1967; denied November 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Harry D. Hughes,* with whom were *Collins & Hughes* on the brief, for appellant.

*Edward R. Jeunette, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

RUTLEDGE, J., delivered the opinion of the Court.

This is an appeal from a judgment for $2,681.54 rendered against Phyllis N. Rowe, the appellant, for her husband's medical care and maintenance while he was confined at Spring Grove State Hospital, and later at Clifton T. Perkins Hospital.

Mrs. Rowe's husband, Willis Rowe, was indicted for murder in June of 1958. In November of 1958, as a result of a pretrial medical examination, upon motion of his attorney, he was committed to Spring Grove State Hospital until his recovery. In January 1960 he was transferred to Clifton T. Perkins State Hospital and remained there until 1962 when he was released to stand trial.

In 1963 a jury found him sane at the time of the murder and guilty in the second degree; it also found him insane at the

time of his trial. On appeal from that conviction the Court of Appeals struck out the conviction of murder and remanded the case, staying the proceedings and committing the defendant to a mental institution until he should recover his reason. *Rowe v. State,* 234 Md. 295, 199 A. 2d 785 (1964).

Under authority of Section 4 and Section 5 of Article 59 of the Annotated Code of Maryland, the Division of Reimbursements of the Department of Mental Hygiene investigated the financial condition of the defendant to determine her ability to pay the costs of her husband's care and maintenance while at the hospital, set the rate at the maximum permissible under the statute, and upon her refusal to pay, filed suit and recovered a judgment for $2,681.54.

Section 1 and Section 3 of Article 59 of the Code (1957) provide that the State of Maryland shall be charged with the duty of maintaining insane persons without sufficient means to pay for their own maintenance who have no relatives or other persons legally chargeable with his or her support. Section 4 of Article 59 provides, in part:

> "No person shall be deemed entitled to the benefit of Sections 1 and 3 of this article who shall possess or be entitled to receive sufficient income for his or her maintenance and support as a patient in any home, retreat or hospital for the insane of this State, or who has relatives or others legally chargeable with his or her support, or who are able to pay for the maintenance and support of the said person as a patient at any retreat or hospital for the insane of this State."

Section 5 of Article 59 provides, in part:

> "The Department of Mental Hygiene shall investigate the financial condition of all such persons and also the financial conditions of their relatives or other persons legally chargeable with their maintenance and support, in order to determine, in each case, the ability of any such person, or of his or her relatives or other persons legally chargeable with his or her maintenance or support, to make payment, in whole or in

part, for the maintenance and support of such person while an inmate of any such institution."

Further evidence of the Department's right to specify who shall pay can be found in the wording of Section 5 where it continues:

"The Department of Mental Hygiene shall make and issue an order specifying therein the amount of such payments so to be made, and the times when the same are to be made and shall have the power to require the relatives of any such persons or others legally chargeable with his or her maintenance and support to pay the amount so specified to be made, and at the times so determined, and further from time to time may modify the terms thereof, as circumstances may justify."

Section 5 also states that:

"It is the intent of Sections 4, 5, and 6 that a husband may be liable for the support of a wife while she is an inmate of any such institution; a wife, for a husband; a father or mother, or both, for a son or daughter; and a son or daughter, or both, for a father or mother; * * *."

The appeal in this case is based on the contention that Section 4 and Section 5 of Article 59 are unconstitutional. The appellant argues that she is being deprived of her property without due process of law, or contrary to the Law of the Land as set forth in Article 23 of the Declaration of Rights of the Constitution of Maryland, and for other reasons.

At early common law a woman's personal property acquired during coverture became her husband's and was liable for his debts. To a large extent Married Women's Acts have abrogated the common law. The Maryland Constitution of 1851, Article III, Section 38 provided:

"The General Assembly shall pass laws necessary to protect the property of the wife, from the debts of the husband during her life, and for securing the same to her issue after her death."

The Maryland Constitution of 1867, our present law, provides,. Article III, Section 43:

"The property of the wife shall be protected from the debts of the husband."

Section 1 of Article 45 of the Annotated Code of Maryland has implemented the constitutional provision.

Ordinarily a married woman's separate property, both real and personal, is beyond the reach of her husband's creditors, to the same extent as though she had never married, and, in the absence of fraud on creditors, property acquired by a married woman as part of her separate estate is not subject to the husband's debts notwithstanding it was purchased by her with money given to her by her husband. *Warner v. Dove*, 33 Md. 579 (1870). See also *Bishop v. Safe Dep. & Tr. Co.*, 170 Md. 615, 185 Atl. 335 (1936).

In *Kerner v. Eastern Hospital*, 210 Md. 375, 123 A. 2d 333 (1956), a suit in which the facts were the converse to those in the instant case, a hospital sued a husband for the medical and hospital expenses of his wife. He alleged that she had deserted him before the debts were incurred. The lower court entered a summary judgment against him without hearing him in the matter. The Court of Appeals reversed the judgment, holding that the Maryland statutes, preserving to the wife the ownership and enjoyment of her property, do not relieve the husband of his common law obligation to maintain her and pay for medical attendance upon her, and only when he is unable to do so can resort be had to her separate estate for her maintenance. But if she deserts him without cause, she forfeits all right to support from him, and carries no authority to pledge his credit even for necessaries, especially when the person furnishing them knows that the husband and wife are not living together, and yet makes no further inquiries.

In the present case the appellee makes several contentions in support of the judgment entered by the lower court. First, it is contended that the marriage relation itself should operate to make a wife liable for her husband's medical and hospital bills, and it is argued that unless marriage is a unilateral contract, it imposes the same degree of responsibility upon a wife to pay, if

she has the ability to do so, as it does upon the husband. This argument must fall before the specific provisions of Section 43 of Article III of the Maryland Constitution.

The appellee urges that the debt in the instant case can be considered the debt of the wife and not of the husband. This very matter was considered in the case of *Dept. of Mental Hygiene v. Hawley,* 379 P. 2d 22 (Cal. 1963), where a son was accused of murder and was found to be insane and was committed to a state hospital until he should regain his sanity. The Court found that his detention was for the protection of the public in the course of administration of criminal law and that the cost thereof was the responsibility of the State and not of his father. The Court said at 379 P. 2d 27, "(T)he committed person is held in the State institution not merely because he is (or was) *insane* but because the State, in a proceeding instituted by it, has accused him of crime, and *his detention is found to be necessary for the protection of the public."* (Emphasis in original.)

We find that the debt sued on in this case was not the debt of the wife. The commitment by the State was involuntary on the part of the plaintiff and on the part of her husband. The question of whether a different result would be reached if she had been instrumental in having him committed is not before us.

The appellant refers the Court to the case of *Department of Mental Hygiene v. Kirchner,* 388 P. 2d 720 (Cal. 1964), *vacated and remanded,* 380 U. S. 194 (1965), 400 P. 2d 321 (1965), where it was held that a statute which sought to hold a child liable for the payment of a mother's medical and hospital bills even though the latter had sufficient funds of her own was in violation of the equal protection clauses of both the United States and the California Constitutions. The mother had been committed in a civil proceeding. We find it unnecessary to consider the *Kirchner* case as the relationship of husband and wife in the instant case is governed by a Maryland constitutional provision.

We conclude that Section 43 of Article III of the Maryland Constitution providing that "The property of the wife shall be

548

protected from the debts of the husband", requires that the judgment heretofore entered be reversed.

We find it unnecessary to consider whether Section 4 and Section 5 of Article 59 are violative of the due process clause of the United States Constitution or Article 23 of the Declaration of Rights of the Maryland Constitution.

*Judgment reversed, with costs to the appellee.*